UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JEFFREY ROX, | ) | Case No. 1:08CV2942 |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | JUDGE KATHLEEN O'MALLEY |
| | ) | (Magistrate Judge McHargh) |
| ROBERT WELCH, | ) | |
| Warden, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | REPORT AND |
| | ) | RECOMMENDATION |
| | ) | |

McHARGH, Mag.J.

The petitioner Jeffrey Rox ("Rox") has has filed a petition for a writ of habeas corpus through counsel, arising out of his 2006 convictions for aggravated robbery and having a weapon while under disability in the Cuyahoga County (Ohio) Court of Common Pleas. In his petition, Rox raises a single ground for relief:

> The Cleveland Police Department violated Jeffrey Rox's due process rights when they "knowingly" test-fired the gun recovered in an alley before processing it for fingerprints: thus, destroying all potential and useful evidence that could have exonerated him. This destruction of vital evidence also violated that police department's own policies.

([Doc. 1](), § 12.)

I.  FACTUAL AND PROCEDURAL BACKGROUND

The Ohio Court of Appeals set forth the following factual and procedural background:

In the early morning of September 17, 2006, Dennis Goeden (Goeden) was robbed at gunpoint in front of 2100 Lakeside Avenue, which is a homeless shelter in downtown Cleveland.  Goeden had been at a party on the night of September 16, 2006, and was walking by the shelter when he encountered a group of men.  According to Goeden, the men asked him if he wanted to buy drugs.  Suddenly one of the men pointed a gun at him and took $28 from his pants pocket.  Goeden flagged down the police and told them what happened.  He described the assailant as a heavyset black male in a red shirt.  The officers looked at the group of men standing in front of the shelter and noticed two individuals wearing red shirts.  The police shined their lights on the group, and Goeden pointed to one man in particular, who ran around the side of the building into an alley.  Goeden identified that man as the one who robbed him.  The officers proceeded with caution around the building and discovered that the alley dead-ended into a fenced-in area.  The officers squeezed through the fence and began searching with flashlights in a densely weeded area.  After approximately twenty to twenty-five minutes, a police broadcast indicated that officers had apprehended a black male in a red t-shirt on East 22nd Street, one block from the scene.  This male was appellant.

The police put appellant in a squad car and drove him to the scene of the crime, where a cold-stand identification was conducted.  A cold stand is when, shortly after an offense is committed, the victim is shown only one person and asked to identify whether that person was the perpetrator of the crime in question.  In the instant case, Goeden identified appellant as the man who robbed him.  Subsequent to the identification, a police officer found a .22 caliber handgun on the ground alongside the building in the alley where appellant ran.

On September 28, 2006, appellant was indicted for aggravated robbery with one- and three-year firearm specifications, carrying a concealed weapon, and having a weapon while under disability.  On December 11, 2006, a jury trial began on counts one and two.  Count three, having a weapon while under disability, was tried to the court.  The court granted appellant's motion for acquittal on the carrying a concealed weapon charge.  Appellant was found guilty of the other two

offenses, including the three-year firearm specification, and the court sentenced him to four years for aggravated robbery and one year for having a weapon while under disability, to run concurrently. The court also sentenced appellant to three years for the firearm specification, to run consecutively to the four-year term, for an aggregate prison term of seven years.

(Doc. 8, RX 5, at 1-3; State v. Rox, No. 89244, 2007 WL 4200671, at *1 (Ohio Ct. App. Nov. 29, 2007).)

Rox filed a timely appeal of his conviction, and set forth the following six assignments of error:

> 1. Appellant's right to due process of law was violated because the admission of the identification evidence at trial constituted plain error.
>
> 2. Appellant's constitutional right to due process of law was violated by the State's bad faith destruction of unique evidence that was potentially useful and had a reasonable probability of exculpating Appellant.
>
> 3. Appellant's constitutional right to due process was violated when the State improperly referred to prior convictions and argued the jury should convict Appellant based upon his bad character, other acts, and propensity to commit the instant offense.
>
> 4. The trial court abused its discretion when it excluded defense exhibits "A" and "B" and deprived the Appellant of his right to a full defense, in violation of Appellant's constitutional right to due process of law.
>
> 5. Appellant was deprived of his constitutional right to effective assistance of counsel, in that counsel failed to move for suppression and a mistrial based upon the unreliable out-of-court identification of Appellant, the intentional destruction of fingerprint evidence, and his failure to adequately comply with the rules of discovery.
>
> 6. The cumulative effect of all the errors denied Appellant a fair trial in violation of his constitutional right to due process of law.

(Doc. 8, RX 3.) On Nov. 29, 2007, the court of appeals affirmed the judgment of the trial court. (Doc. 8, RX 5; State v. Rox, No. 89244, 2007 WL 4200671, at *1 (Ohio Ct. App. Nov. 29, 2007).)

Rox filed a timely appeal to the Supreme Court of Ohio, which set forth the following proposition of law:

> When the State destroys potentially useful evidence, the test to determine whether the State destroyed the evidence in bad faith focuses on the timing of the destruction of evidence, not just the State's conduct. The destruction of potentially useful evidence violates a defendant's due process rights. Fifth and Fourteenth Amendments of the U.S. Constitution; Section 16, Article I of the Ohio Constitution.; Arizona v. Youngblood (1988), 488 U.S. 51.

(Doc. 8, RX 6.) On April 23, 2008, the state supreme court denied leave to appeal and dismissed the case because it did not involve any substantial constitutional question. (Doc. 8, RX 8; State v. Rox, 117 Ohio St.3d 1479, 884 N.E.2d 1110 (2008).)

On May 21, 2008, Rox filed a motion to vacate or modify judgment of sentence, under Ohio Rev. Code § 2953.21, on the basis that his indictment was defective. (Doc. 8, RX 9.) The court denied his motion on Aug. 14, 2008. (Doc. 8, RX 11.)

Rox filed this petition for a writ of habeas corpus on Dec. 17, 2008. (Doc. 1.)

## II. HABEAS CORPUS REVIEW

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, which provides the standard of review that federal

4

courts must apply when considering applications for a writ of habeas corpus. Under the AEDPA, federal courts have limited power to issue a writ of habeas corpus with respect to any claim which was adjudicated on the merits by a state court. The Supreme Court, in Williams v. Taylor, provided the following guidance:

> Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied -- the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 412-13 (2002). See also Lorraine v. Coyle, 291 F.3d 416, 421-422 (6th Cir. 2002), cert. denied, 538 U.S. 947 (2003).

A state court decision is "contrary to" clearly established Supreme Court precedent "if the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases." Williams, 529 U.S. at 405. See also Price v. Vincent, 538 U.S. 634, 640 (2003).

A state court decision is not unreasonable simply because the federal court considers the state decision to be erroneous or incorrect. Rather, the federal court must determine that the state court decision is an objectively unreasonable application of federal law. Williams, 529 U.S. at 410-12; Lorraine, 291 F.3d at 422.

5

Rox has filed his petition pro se. The pleadings of a petition drafted by a pro se litigant are held to less stringent standards than formal pleadings drafted by lawyers, and will be liberally construed. Urbina v. Thoms, 270 F.3d 292, 295 (6th Cir. 2001) (citing Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972) (per curiam)). Other than that, no special treatment is afforded litigants who decide to proceed pro se. McNeil v. United States, 508 U.S. 106, 113 (1993) (strict adherence to procedural requirements); Jourdan v. Jabe, 951 F.2d 108 (6th Cir. 1991); Brock v. Hendershott, 840 F.2d 339, 343 (6th Cir. 1988).

### III. FAILURE TO PRESERVE EVIDENCE

Rox contends that the Cleveland Police Department violated his due process rights when they knowingly test-fired a gun recovered in an alley at the scene of the crime before processing it for fingerprints, which destroyed potential and useful evidence that could have exonerated him. (Doc. 1, at § 12.)

The court of appeals ruled on his assignment of error as follows:

In analyzing failure to preserve or destruction of evidence against a criminal defendant, a clear distinction is drawn between materially exculpatory and potentially useful evidence. See Brady v. Maryland (1963), 373 U.S. 83; Arizona v. Youngblood (1988), 488 U.S. 51. If the evidence is material, a due process violation occurs regardless of whether the prosecution acted in good or bad faith. State v. Johnston (1988), 39 Ohio St.3d 48. Evidence is deemed material "only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Id. at 61 (quoting United States v. Bagley (1984), 473 U.S. 667, 682).

6

On the other hand, "failure to preserve potentially useful evidence does not constitute a denial of due process of law, nor should it lead to a presumption of suggestiveness." State v. Keith (1997), 79 Ohio St.3d 514, 523.  Potentially useful evidence includes evidence that may have exonerated the defendant.  See State v. Geeslin, Slip Copy, Ohio S.Ct. No.2006-0882, 2007-Ohio-5239.  "If the evidence in question is not materially exculpatory, but only potentially useful, the defendant must show bad faith on the part of the state in order to demonstrate a due process violation." Id.  Bad faith requires "a dishonest purpose, moral obliquity, conscious wrongdoing, breach of a known duty through some ulterior motive or ill will partaking of the nature of fraud.  It also embraces actual intent to mislead or deceive another." Hoskins v. Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272, 276.

In the instant case, fingerprints recovered from the gun found in the alley after the crime was committed amount to potentially useful evidence, as the prints had a possibility of either helping or hurting appellant in the defense of his case.  Cleveland police officer Nathan Willson, who is a firearms examiner in the scientific investigations unit, testified that he was ordered by the Grand Jury to test fire the gun in question immediately for operability.  Willson performed this test fire before any prints were taken from the gun.  He testified that test firing will destroy fingerprints found on a gun, and that in this case, no prints were taken from the gun.  Willson also testified about the following two procedures regarding firearms: 1) "Under certain Ohio statutes, the firearm has to be operable for certain charges to be presented, or to add what they call a gun specification to certain cases.  So we often test fire firearms to determine operability-excuse me-or if it works."; and 2) "[C]ity policy is that we will not test fire firearms before fingerprinting, because the firing process can destroy any fingerprint evidence, as it's a very delicate form of evidence."

To sum up this evidence, a police officer was ordered to violate departmental policy regarding evidence from the firearm used in the robbery.  Appellant was charged with a one- and three-year firearm specification, which require a gun to be operable.  See R.C. 2923.11(B)(1) (defining "firearm" as "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant * * *").  However, the crux of appellant's argument is that this is a case of mistaken identity, and absent fingerprints from the gun, the only evidence the state presented that linked him to the crime was Goeden's eyewitness identification.

7

>The record is void of any evidence that this break in procedure involved bad faith. Officer Hageman testified that after he found the gun in the alley, he put it in an evidence bag, identified it and marked it "to be printed," and that this is standard procedure. Additionally, after Officer Willson testified that "it's my understanding that the detective was threatened with being held in contempt by the Grand Jury if he didn't follow the directive," defense counsel requested that this statement be stricken from the record, which the court denied. Although it is unclear why this break in procedure occurred, it is also equally unclear that it involved bad faith, without more specific evidence. We are bound to follow the directive in Keith, supra, stating that failure to preserve potentially useful evidence should not "lead to a presumption of suggestiveness." Appellant's second assignment of error is without merit.

(Doc. 8, RX 5, at 7-10; Rox, 2007 WL 4200671, at *3-*4.)

The U.S. Supreme Court has held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Arizona v. Youngblood, 488 U.S. 51, 58 (1988); see also United States v. Generett, No. 04-5832, 2005 WL 2173819, at *2 (6th Cir. Sept. 7, 2005); United States v. Rambo, 74 F.3d 948, 954 (9th Cir.), cert. denied, 519 U.S. 819 (1996). The Court distinguished between exculpatory evidence and "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." Youngblood, 488 U.S. at 57.

>As to the issue of bad faith, Rox argues:
>
>The Police acted in bad faith by destroying exculpatory fingerprint evidence. The record reflects that City policy was not followed pertaining to the preservation of fingerprint evidence on a firearm.
>
>The State prosecutor or grand jury members use of coercion and threats to force the Police to unlawfully test fire the firearm used as

8

> evidence by the State; constitutes inherent bad faith on behalf of the State. Exculpatory value is apparent and must be a given because no fingerprint evidence was ever produced by the State to show that I ever had possession of the firearm obtained by the State.

(Doc. 12, at 2.)

First of all, the court must note that the "potentially useful evidence" at issue cannot properly be characterized as "exculpatory." The court cannot agree that its exculpatory value "is apparent and must be a given." (Doc. 12, at 2.) In the words of the Supreme Court, it must be considered "evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." Youngblood, 488 U.S. at 57. For example, it is uncertain whether any recoverable fingerprint evidence existed at all, prior to the test firing. See generally United States v. Glover, 479 F.3d 511, 519 n.2 (7th Cir. 2007) (testimony that fingerprints rarely recovered from firearms); United States v. Burdeau, 168 F.3d 352, 357 (9th Cir.), cert. denied, 528 U.S. 958 (1999) (testimony that identifiable fingerprints almost never found on guns). While the absence of fingerprints might have proved "potentially useful evidence," it is not a certainty that such evidence would have necessarily been found exculpatory. See, e.g., United States v. Matthews, 498 F.3d 25, 31 (1st Cir. 2007), cert. denied, 552 U.S. 1238 (2008) (absence of any fingerprints on gun not inconsistent with finding of guilt).

As outlined above, the officer in charge of the forensics lab testified at trial that "he was ordered by the Grand Jury to test fire the gun in question immediately

for operability. [He] performed this test fire before any prints were taken from the gun." (Doc. 8, RX 5, at 8-9; Rox, 2007 WL 4200671, at *4; see also doc. 8, Trial Transcript, vol. II, at 287-290.) Absent some evidence of malicious intent, "a failure to follow procedure is insufficient to support a finding of government bad faith." United States v. Christian, No. 05-4636, 2008 WL 5206382, at *2 (3d Cir. Dec. 15, 2008). Rox's allegation that City policy was not followed does not show bad faith.

Nor does the test firing, particularly when ordered by the Grand Jury, constitute "inherent bad faith," as Rox argues. (Doc. 12, at 2.) In Rambo, for example, the Ninth Circuit affirmed the finding of the district court which rejected an argument that sheriff's deputies "destroyed potentially exculpatory evidence in bad faith" when they conducted test firing to determine whether a weapon was fully automatic. Rambo, 74 F.3d at 954. The fact that, had the weapon not been test-fired, fingerprint testing "might have revealed the absence of fingerprints" was found to be "irrelevant in light of the lack of a showing of bad faith." Id.

Due process concerns are not implicated absent such indicators of bad faith as "official animus" or a "conscious effort to suppress exculpatory evidence." United States v. Zambrana, 841 F.2d 1320, 1341-1342 (7th Cir. 1988) (citing California v. Trombetta, 467 U.S. 479, 488 (1984)). Here, the state court of appeals found that the record was "void of any evidence" of bad faith. (Doc. 8, RX 5, at 9; Rox, 2007 WL 4200671, at *4.) This court cannot say that the state court decision involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States in Youngblood.

10

SUMMARY

This court cannot find that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law as expressed by the Supreme Court. The petition for a writ of habeas corpus should be denied.

RECOMMENDATION

It is recommended that the petition for a writ of habeas corpus be DENIED.


Dated:  July 12, 2010                      /s/ Kenneth S. McHargh
                                           Kenneth S. McHargh
                                           United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time WAIVES the right to appeal the District Court's order. See Thomas v. Arn, 474 U.S. 140 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).